

Jonathan Bach
+1 212 479 6470
jbach@cooley.com

March 16, 2017

Honorable Alison J. Nathan
United States District Court
Southern District of New York
40 Foley Square, Room 2102
New York, NY 10007

**Re:  Defendant Michael Francis;** *United States v. Burrell et al.*, **15 Cr. 95 (AJN)**

Dear Judge Nathan:

    We respectfully submit this letter on behalf of Michael Francis in anticipation of his sentencing, set for March 23, 2017.

    On October 18, 2016, Michael pled guilty to one count of racketeering under 18 U.S.C. § 1962(d). In a plea agreement, he stipulated to a guidelines range of 21-27 months of imprisonment, reserving the right to seek a lower sentence.  The Probation Office has recommended a sentence of 27 months after adding a two-level enhancement, we believe erroneously, for Michael's alleged use of violence in connection with his offense.  For the reasons that follow, we respectfully urge the Court to consider a downward variance to a sentence of time served.

    Michael is perhaps the least culpable defendant charged in this very large case. His conduct consists predominantly of street-level marijuana sales.  His prior criminal record includes only a misdemeanor offense for marijuana possession in the fifth degree, which resulted in a $25 fine, and a misdemeanor vehicle offense, which resulted in a $188 fine. (Presentence Report ("PSR") ¶¶ 44-45.)

    Aware of the massive publicity and serious nature of the allegations arising from the present case, Michael voluntarily surrendered to law enforcement authorities, traveling to the courthouse with his mother to face the charges against him.  After approximately one month of incarceration, he was released on bail, subject to home detention, and has since resided with his mother while taking employment when available and studying diligently to earn his GED.

    Since his release on bail, Michael's progress in pursuing education in an effort to turn his life around has been nothing less than remarkable, as set forth in the attached letter from his GED instructor, who summarizes Michael's dedication and progress better than any lawyer possibly could.  At the same time, Michael has overcome his former marijuana addiction, which has boosted his self-esteem and lifted his hopes for the future, no doubt helping to facilitate his progress.

    We respectfully submit that, in view of Michael's relatively limited offense conduct and the progress he has since made, neither society nor the ends of justice would be served by requiring a long period of incarceration in this case.  Rather, this is one instance in which, thanks to the intervention of the criminal justice system, a young man is now on the right course and finally taking the steps that he should have been taking all along.  It would be a shame to set back that progress and diminish everyone's hopes for his future with a further term of incarceration, and such a punishment, in any event, is not warranted by the facts of this case.



Honorable Alison J. Nathan
March 16, 2017
Page Two

**I.      Michael's Personal Background, Role in The Offense, And Progress Since His Arrest**

    **A.      Personal History Before The Present Offense**

Michael, age 25 at the time of his arrest, had grown up an only child residing predominantly with his mother, Janet Smith. Until his early teens, he was a relatively successful student and even at times a chess champion. Problems began when his mother took a job that required her to leave him on his own several days and nights of the week when he was only age 13. She lived in the home of her employer, where she served as a personal health aide, and would return to check on Michael when she could, asking neighbors to check on him while she was gone. It was during this period that his school performance began to decline and he began to hang around with kids who often skipped school. Ex. A (Letter from Janet Smith). Ms. Smith realized that the situation was not working out and sent Michael to live with relatives in Jamaica, where she thought he might have a more stable environment. Unfortunately, when Michael returned after living abroad for more than a year, he found it difficult to return to school in the United States. (PSR ¶ 58.) After tenth grade, he dropped out completely.

As a teenager, Michael worked as an assistant at a butcher shop and then at a Burger King. (PSR ¶¶ 66-67.) Unfortunately, his stints at these jobs did not work out. He depended on his mother to drive him to and from work, and the late shifts made it difficult for her to perform her own job. The situation was not practical and he had to quit. Michael has also volunteered at his church, helping move furniture and performing various janitorial tasks, and has on occasion been paid nominal sums for such work.

Michael began smoking marijuana on a daily basis at age 17 and continued to do so until his arrest in the present case. (PSR ¶ 62.) As noted above, Michael has only a limited criminal history, with no prior felony convictions.

    **B.      Role In The Offense**

Michael engaged in street-level sales of marijuana in the neighborhood surrounding his home, where the gang described in the indictment often controlled who could or could not sell drugs. Michael was never a member of the gang but was associated with it by virtue of his permitted marijuana sales and occasional communications with gang members. The Presentence Report refers to various postings on social media accounts such as Facebook to document instances of Michael's communication and association with gang members, but contains sparse if any details of his actual participation in any gang activity other than marijuana (and occasional Percocet) sales. (PSR ¶¶ 20-27.)

The Presentence Report notes that Michael "is liable for the distribution of between 20 and 40 kilograms of marijuana." (PSR ¶ 29.) It should be noted that the total quantity associated with Michael's own sales pales in comparison to this amount. This amount represents that portion of the entire amount distributed by the entire conspiracy attributable to Michael for purposes of his plea.

The Presentence Report also characterizes Michael as a "fugitive." That was the government's position at two bail hearings in this case, in which it was undisputed that Michael, accompanied by his mother, voluntarily turned himself in to law enforcement authorities, who had never returned to his home to make his arrest after an initial visit in which he was not at home. Far from a fugitive, he responsibly self-surrendered.



Honorable Alison J. Nathan
March 16, 2017
Page Three

### C. Michael's Progress Since His Arrest

Michael has been subject to home detention for the past nine months, during which time he has worked occasional jobs when available, quit his personal marijuana use, and made immense strides in pursuing further education.

Through Career Connections Associates, he obtained temporary employment as a maintenance man, helping clean and maintain three residential buildings in Yonkers, removing trash, sweeping the premises and performing other manual tasks. (PSR ¶ 65.)  He was committed to the job and worked five days a week, eight hours a day, while it remained available.  He has since submitted dozens of applications to potential employers and had several interviews, but has been unsuccessful in finding additional employment at this time, largely because of his uncertain legal status given the pendency of this case.  His commitment to his studies, as described below, has also led him to view employment as secondary to his other current priorities.

The most remarkable aspects of Michael's progress are evident in his commitment to his GED course, which he attends three or four days a week, supplemented by substantial independent study at home.  His teacher, a Ph.D. Candidate and Instructor at NYU, describes Michael as "one of the exemplary students in my class.  He is always willing and ready to assist when I need him to tutor another student and bring them up to pace with understanding certain materials." (Ex. B (Letter from Obi Ude).)  She writes, "Mike is known amongst his classmates for his work ethic, positive attitude, teamwork mentality, and leadership. On multiple occasions with different topics, but most recently during our class on Tuesday, March 7, 2017, Mike opted to use the last 30 mins of class to teach another student his understandings in working with fractions, exponents, and orders of operations.  It is always pleasing to see this habit of his take on a natural guide in the classrooms, which is not only encouraged by me but also his peers."  Id.

She further notes, "I am aware that Mike is going through a tough time in the courts.  However, I have only witnessed a young man in my classroom, who has been focused and dedicated to turning his life around and has proven so with his actions. He has expressed to me his hopes and plans for the future and I can only hope that his dreams of earning this diploma and continuing with his higher education will still come to fruition despite his mistakes."  (Ex. B.)

She further notes, "I have witnessed tremendous growth in Mike during the time I spent working with him in my class, and am certain that the skills and abilities he has acquired will allow him to be a beneficial member of society.  I have taught Mike some difficult and complex subjects requiring high levels of focus and understanding: he met every challenge, topic, and goal presented and tackled every problem with grace and ease. Regarding some of the more difficult topics, Mike's angle of approaching the problems with questions was insightful and practical, and he demonstrated a remarkable capacity for breaking down large issues into manageable segments. His actions have consistently inspired and motivated other students.  Mike understands intuitively when his peers were confused, lost, or off-track, and brought those individuals back on task without judgment." (Ex. B)

She further notes, "in the months that I have known and worked with Mike, I have developed enduring respect for both his work ethic and his problem-solving abilities. Within my classroom, he is a role model, peer counselor, resource, and leader. He is the type of person who enriches the learning environment for everyone around him. During his time at MMCC, Mike has proved to be a hard-working and responsible individual and I am delighted to provide this letter of recommendation on his behalf."  (Ex. B.)



Honorable Alison J. Nathan
March 16, 2017
Page Four

Michael's mother and father have witnessed his dedication to this educational program and are eager to see him continue on this path.  (Exs. A & C.)

## II.   The Presentence Report Erroneously Includes A Two-Level Enhancement For Alleged "Violence" In Connection With The Offense

The Probation Office has added a two-level enhancement pursuant to §2D1.1(b)(2) on the ground that "the defendant used violence to facilitate the offense."  (PSR ¶ 34.)  The Probation Office states its rationale as follows:  "According to information received from the Government, Francis participated in gang brawls with a rival gang during the racketeering conspiracy."  (PSR ¶ 75.)

We believe this enhancement is unwarranted.  The Probation Office relies on information provided by the government, which the government itself is not advocating as grounds for enhancement.  The information in question is at best vague.  When the same allegation surfaced at the first bail hearing, the government lacked specific information to respond to the Magistrate Judge's inquiries about the nature of such conduct.  Ex. D (Transcript of Bail Hearing, May 17, 2016, at 6:18-7:12.)  In any event, the parties agree that there is insufficient evidence to prove by a preponderance that any such "violence" was in furtherance of racketeering activity.

## III.   A Downward Variance To A Sentence Of Time-Served Will Serve The Ends Of Justice In This Case

While the Indictment in this case refers to significant acts of violence and gang activity, Michael's role was for the most part limited to selling small amounts of marijuana while using Facebook to post information about his sales.  He is among the least culpable, if not the least culpable, of the many people charged.

We respectfully submit that a downward variance is warranted based on a combination of mitigating circumstances.  These circumstances include the nature of Michael's activity, which fell short of any significant gang-related criminality with the exception of street-level marijuana sales, a type of conduct well beneath that of most offenders prosecuted in this district for narcotics-distribution-related crimes.  We note that had he been prosecuted solely as a drug offender, and not as a racketeer, he would have been eligible for consideration under the safety valve based on his *de minimis* criminal record.  He served approximately one month in prison incident to his arrest in this case, followed by approximately nine months of home detention – a restriction of his liberty that in itself constitutes a form of punishment.

Most significantly, it is his personal progress during his period of home detention that distinguishes Michael and provides reason not to impose a further term of incarceration.  Michael has taken significant steps to reverse the course of his life.  A former daily marijuana smoker living a listless life with no clear ambition, he has quit his habit to dedicate himself to an educational program, in which he is experiencing the first signs of success since his earlier academic prowess as a youth before his troubles began.  It is clear from the letter from his teacher that he is thriving in that environment, using it as an occasion not only to learn and master new material, but to establish avenues of support and recognition.  He now has a network of parental, teacher and peer support that will encourage his forward momentum.  He has his sights set on college or a vocation and has demonstrated that he has the commitment and willingness to work hard toward those ends.  A term of incarceration would set back that progress.  A term of supervised release, on the other hand, could provide a mechanism to help assure and monitor his progress, particularly if it were to include drug testing and counseling and requirements that he continue to pursue educational and employment opportunities.  In view of all these circumstances,



Honorable Alison J. Nathan
March 16, 2017
Page Five

we respectfully submit that a further term of incarceration is not necessary to serve the ends of justice in this case.

For the foregoing reasons, we respectfully urge the Court to impose a sentence of time served followed by a term of supervised release sufficient to monitor and assure Michael's continued progress.

Respectfully,

　/s/＿＿＿＿＿＿＿＿＿＿＿＿
Jonathan Bach
David Kupfer
Abigail Seidner